Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/10/2026 08:08 AM CDT

Yessica Nicol Dawnna Bocanegra, appellant, v.
Alfonso Rosales Gonzalez and Ema Gonzalez,
appellees, and Viking Insurance Company of
Wisconsin, garnishee-appellee.

___ N.W.3d ___

Filed July 10, 2026.    No. S-24-920.

1. **Garnishment: Appeal and Error.** Garnishment is a legal proceeding. To the extent factual issues are involved, the findings of the fact finder will not be set aside on appeal unless clearly wrong; however, to the extent issues of law are presented, an appellate court has an obligation to reach independent conclusions irrespective of the determinations made by the court below.
2. **Jurisdiction.** Subject matter jurisdiction is a question of law.
3. **Judgments: Jurisdiction: Appeal and Error.** A jurisdictional issue that does not involve a factual dispute presents a question of law, which an appellate court independently decides.
4. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.
5. ____: ____. An appellate court must consider whether the court from which the appeal was taken had jurisdiction, because if it did not, then the appellate court acquires no jurisdiction.
6. **Jurisdiction.** Questions regarding a court's subject matter jurisdiction must be resolved as a threshold matter before an examination of the merits.
7. **Jurisdiction: Words and Phrases.** Subject matter jurisdiction is the power of a tribunal to hear and determine a case in the general class or category to which the proceedings in question belong and to deal with the general subject matter involved.
8. **Jurisdiction.** The question of a court's subject matter jurisdiction does not turn solely on the court's authority to hear a certain class of cases. It also involves determining whether a court has authority to address a

particular question that it assumes to decide or to grant the particular relief requested.

9. **Standing: Jurisdiction: Parties.** The requirement of standing is fundamental to a court's exercise of subject matter jurisdiction, and only a party who has standing may invoke the jurisdiction of a court.

10. **Judgments: Debtors and Creditors: Garnishment.** Garnishment in aid of execution is a method by which a judgment creditor can recover against a third party for the debt owed by a judgment debtor.

11. ____: ____: ____. Garnishment in aid of execution is, in effect, an action by a judgment debtor in the garnishor's name against the garnishee.

12. **Garnishment: Liability: Service of Process: Time.** A garnishee's liability is to be determined as of the time the garnishment summons is served.

13. **Judgments: Debtors and Creditors: Garnishment: Liability: Proof.** In an action to determine the liability of the garnishee, the judgment creditor has the burden to establish that the garnishee was liable to the judgment debtor at the time notice of garnishment was served.

14. **Judgments: Debtors and Creditors: Garnishment.** As a general principle, the claim of a judgment creditor against a garnishee can rise no higher than the claim of the judgment debtor against the garnishee.

15. **Judgments: Debtors and Creditors: Garnishment: Subrogation.** A garnishor is subrogated to the rights of the judgment debtor and can recover only by the same right and to the same extent that the judgment debtor might recover from the garnishee.

16. **Judgments: Garnishment: Liability: Service of Process: Time.** When determining the liability of a garnishee, the test is whether, at the time the summons in garnishment was served, the facts would support a recovery by the judgment debtor against the garnishee.

17. **Garnishment.** Garnishment is a legal, not equitable, remedy unknown at common law and is a purely statutory remedy.

18. **Garnishment: Statutes: Legislature.** Because garnishment is a creature of statute, garnishment proceedings are necessarily governed by statutory provisions and specifications. Courts may not allow garnishment proceedings to follow any course other than that charted by the Legislature.

19. **Insurance: Contracts: Reformation: Equity.** Reformation of an insurance policy is an equitable remedy.

20. **Actions: Reformation.** As a general rule, reformation of written instruments may be had by the immediate parties thereto and by those standing in privity with them, but a person not a party or privy to the transaction may not maintain the action.

21. **Insurance: Tort-feasors: Liability: Actions.** Nebraska recognizes the general rule that there is no privity between an injured person and the tort-feasor's liability insurer. For this reason, Nebraska does not permit an injured person to bring direct actions against the tort-feasor's liability insurer.

22. **Rules of the Supreme Court: Appeal and Error.** A party wishing to secure appellate review of a cross-appeal must comply with the appellate briefing rules.

23. ____: ____. When a brief of an appellee fails to present a cross-appeal that conforms to the requirements of Neb. Ct. R. App. P. § 2-109(D) (rev. 2025), an appellate court can decline to consider the cross-appeal or may elect to review the proceedings for plain error.

Appeal from the District Court for Hamilton County: RACHEL A. DAUGHERTY, Judge. Affirmed in part, and in part vacated and set aside.

John C. Fowles, of The Fowles Law Office, P.C., L.L.O., for appellant.

Matthew D. Hammes and Maggie E. Frei, of Locher Pavelka Dostal Braddy & Hammes, L.L.C., for garnishee-appellee.

FUNKE, C.J., CASSEL, STACY, PAPIK, FREUDENBERG, BERGEVIN, JJ., and POST, District Judge.

PER CURIAM.

After being awarded a judgment for over $1 million for injuries sustained in an automobile accident, the plaintiff commenced garnishment proceedings against the defendant's purported liability insurer. The insurer denied garnishee liability and attached a copy of a declaratory judgment holding that its policy did not afford coverage to the defendant for the accident. The plaintiff filed an application to determine garnishee liability, alleging she was not bound by the declaratory judgment action. The garnishment court agreed and, over the insurer's objection, permitted the plaintiff to litigate the availability of coverage during the trial to determine garnishee liability. Ultimately, the garnishment court determined that the

policy did not afford liability coverage to the defendant, and it denied the plaintiff's request to reform the policy to provide such coverage. The court entered a judgment discharging the garnishee from liability.

The plaintiff appeals, challenging only the garnishment court's denial of her request to reform the policy. For reasons we will explain, we conclude the garnishment court lacked jurisdiction to consider the merits of the plaintiff's request to reform the policy, so we vacate that portion of the judgment and otherwise affirm the judgment of discharge.

## I. BACKGROUND

### 1. Negligence Action in Hamilton County

In 2021, Yessica Nicol Dawnna Bocanegra was seriously injured when her vehicle was struck by a Chevrolet Suburban operated by Alfonso Rosales Gonzalez (Gonzalez) and registered to Gonzalez' mother.

In 2022, Bocanegra filed this negligence action against Gonzalez and his mother in the district court for Hamilton County, seeking damages caused by the accident. Bocanegra settled her claim against Gonzalez' mother for $250,000, and her claim against Gonzalez proceeded to trial.

In April 2024, the district court entered judgment in favor of Bocanegra and against Gonzalez in the amount of $1,100,000, plus costs and interest.

### 2. Declaratory Judgment Action in Hall County

In 2022, shortly before Bocanegra commenced the negligence action at issue in this appeal, Viking Insurance Company of Wisconsin (Viking) filed a declaratory judgment action in the district court for Hall County seeking a declaration of noncoverage under policy No. 11407230795 for any liability arising out of the accident between Bocanegra and Gonzalez. Viking named Gonzalez' mother and father as defendants, alleging they were the named insureds on the

automobile liability policy. Viking also named Bocanegra and Gonzalez as defendants, alleging "their interests may be affected by the declaration sought."

Bocanegra moved to be dismissed as a party from the declaratory judgment action under the holding in *Medical Protective Co. v. Schrein.*[1] In *Medical Protective Co.*, we held that in declaratory judgment actions between tort-feasors and their liability insurers, a trial court errs by exercising jurisdiction over injured claimants, and that in such actions, the insurer may not "obtain a declaration of noncoverage that is binding against an injured person in a later action."[2] Relying on *Medical Protective Co*., the district court granted Bocanegra's motion to dismiss and the declaratory judgment action proceeded to judgment against the remaining defendants.

The declaratory judgment, entered in January 2023, held that Viking policy No. 11407230795 afforded no coverage to Gonzalez or his parents "for any matters, claims, injuries or damages arising out of the accident occurring on August 28, 2021, and which is the subject of [Bocanegra's] lawsuit appearing in the District Court of Hamilton [County.]" There is no indication in our record that any party appealed the declaratory judgment.

### 3. GARNISHMENT PROCEEDING

In May 2024, approximately 1 month after Bocanegra obtained the judgment against Gonzalez in the negligence action, Bocanegra commenced a garnishment in aid of execution against Viking. Bocanegra's affidavit and praecipe for summons alleged that she had a judgment against Gonzalez for $1,100,000, plus $5,525.62 in interest, and had reason to believe that Viking either had property belonging to or was indebted to Gonzalez under policy No. 11407230795.

Viking timely responded to the garnishment interrogatories and answered that it did not have any property belonging to

---

[1] *Medical Protective Co. v. Schrein*, 255 Neb. 24, 582 N.W.2d 286 (1998).

[2] *Id*. at 28, 582 N.W.2d at 290.

Gonzalez and it was not indebted to him. Viking attached to its interrogatory answers a copy of the 2023 declaratory judgment holding that the Viking policy provided no coverage to Gonzalez for the accident with Bocanegra.

Bocanegra filed a timely application to determine garnishee liability, controverting Viking's claim that its policy afforded no coverage for Gonzalez' negligence. In the application, Bocanegra claimed she was not bound by the 2023 declaratory judgment and was "entitled to her own independent determination of [Viking's] obligations" to Gonzalez under the policy. She asserted that the Viking policy provided liability coverage to Gonzalez for the accident. Alternatively, she asserted that "any policy language that may exclude [Gonzalez] as an insured" should be reformed to provide such coverage. She alleged two theories to support her request for reformation, which we summarize later in the opinion.

In response to the application, Viking filed what it titled a "Motion to Strike, Motion to Quash and Resistance to [Bocanegra's] Application for Determination of Garnishee Liability." Viking's motion, which was not challenged on procedural grounds,[3] reiterated Viking's position that the declaratory judgment conclusively established that the Viking policy did not provide liability coverage to Gonzalez for the automobile accident at issue, and it asserted that the declaration of noncoverage was binding on Bocanegra because she had been a party defendant in the declaratory judgment action and voluntarily sought dismissal from that action.

(a) Garnishment Trial

Bocanegra's application and Viking's motion to strike/quash were consolidated and tried together. Both Gonzalez and his

---

[3] See *Torrison v. Overman*, 250 Neb. 164, 172, 549 N.W.2d 124, 130 (1996) (holding that "in a garnishment proceeding, the answers to interrogatories and the application to determine garnishee liability are the only pleadings for disposition of the liability issue"), *disapproved on other grounds, ML Manager v. Jensen*, 287 Neb. 171, 842 N.W.2d 566 (2014).

mother testified, and the court received several exhibits, including a certified copy of the Viking policy in effect on the date of the accident and the key pleadings and orders entered in the 2023 declaratory judgment action. We summarize that evidence, and the trial court's factual findings, only as necessary to address the issues on appeal.

Viking policy No. 11407230795 was a "Named Driver" policy that included a "Broad Form Named Driver Endorsement," providing:

> **We** will pay damages for which **you** are legally liable because of **bodily injury** and/or **property damage** caused by a **car accident** arising out of **your** operation of **your insured car** by an **insured person**. **We** will not provide coverage for any liability arising out of the operation of **your insured car** by any other person who is not an **insured person**.

The terms appearing in bold type are specifically defined in the policy. "**You**" and "**Your**" were defined to mean "the person(s) shown as the Named Insured on **your** Declarations Page." The declarations page identified just two named insureds— Gonzalez' mother and father. "**Your insured car**" was defined to mean either a "**car** owned or leased by **you** which **you** are operating," a "**car** owned by **you** which is not being operated by any person," or a "**car** not owned or leased by **you** which **you** are operating."

Viking argued that under the plain terms of the policy, there was no liability coverage for Gonzalez because he was not a named driver under the policy. Bocanegra did not strenuously contest Viking's interpretation of the policy language; instead, she argued that Gonzalez was a permissive driver, and she asked the garnishment court to reform the Viking policy to cover not only named drivers, but also permissive drivers, under either of two theories.

Her first theory was that any policy provision purporting to exclude permissive drivers was contrary to the provisions of Neb. Rev. Stat. § 60-534 (Reissue 2021). Under § 60-534,

automobile liability policies used as proof of financial responsibility are required to designate "all motor vehicles with respect to which coverage" is being provided and are required to insure not only the "person named" in the policy but also "any other person . . . using [an insured motor vehicle] with the express or implied permission of such named insured." Viking argued that the requirements of § 60-534 did not apply to policy No. 11407230795, because that policy was not certified as proof of financial responsibility.

Bocanegra's second theory anticipated Viking's argument, and she acknowledged that under Neb. Rev. Stat. § 60-561 (Reissue 2021), the requirements of § 60-534 do not apply "to any automobile liability policy which has not been certified . . . as proof of financial responsibility." But Bocanegra argued that to the extent § 60-561 rendered the provisions of § 60-534 inapplicable to the Viking policy, the garnishment court should find that § 60-561 was unconstitutional because it violated equal protection principles under both the U.S. and Nebraska Constitutions and was impermissible "special legislation" under the Nebraska Constitution.

### (b) Garnishment Judgment

In an order entered November 18, 2024, the district court summarized the testimony adduced during the hearing and made several factual findings based on the testimony of Gonzalez and his mother. The court found that Gonzalez was operating the Suburban when it collided with Bocanegra's vehicle, that the Suburban was registered to Gonzalez' mother, that the mother was the person who obtained the Viking policy, and that Gonzalez "had taken the car without permission from his father's house" on the day of the accident. These factual findings are not challenged on appeal.

Turning to the parties' dispute over coverage for Gonzalez' negligence under the Viking policy, the court first addressed Viking's argument that the 2023 declaratory judgment of noncoverage was binding on Bocanegra. The garnishment court

rejected that argument, noting that before the declaratory judgment was issued, Bocanegra had successfully requested to be dismissed as a party under the holding in *Medical Protective Co.*[4] Relying on the statement in *Medical Protective Co.* that an insurer's "attempt to obtain a declaration of noncoverage that would be binding on an injured person in a later action is inappropriate, since more effective relief can and should be obtained in other proceedings,"[5] the garnishment court concluded that the 2023 declaration of noncoverage was not binding on Bocanegra. And relying on the suggestion in *Medical Protective Co.* that the insurer's "assertions of noncoverage can be presented without any consequential harm to [the insurer] if or when any of the claimants seeks to garnish policy proceeds as a result of a judgment against [the tort-feasor],"[6] the garnishment court concluded that Bocanegra must be given an opportunity, in the garnishment proceeding, to prove her claim that the Viking policy provided liability coverage to Gonzalez for the accident.

Regarding the question of coverage under the Viking policy, the garnishment court recounted the relevant policy provisions and concluded that Bocanegra's coverage arguments were unavailing. The court reasoned that the language of the Viking policy unambiguously excluded "coverage for any liability arising out of the operation of [y]our insured car by any other person who is not an insured person" and concluded that because Gonzalez was not a named insured under the Viking policy, it provided no liability coverage to Gonzalez for the accident with Bocanegra.

Finally, the garnishment court addressed Bocanegra's request to reform the Viking policy to provide coverage for permissive drivers. In doing so, the court did not address whether it had authority in a garnishment proceeding to

---

[4] *Medical Protective Co., supra* note 1.

[5] *Id*. at 31, 582 N.W.2d at 291.

[6] *Id*.

reform the policy, whether Bocanegra had standing to seek reformation of the policy, or whether Gonzalez could be considered a permissive driver in light of the factual finding that he was using the Suburban without permission at the time of the accident. Instead, the garnishment court addressed the merits of Bocanegra's reformation theories and concluded, as a matter of law, that the provisions of § 60-534 requiring coverage for permissive drivers did not apply to the Viking policy. That was so, the court reasoned, because under the express provisions of § 60-561, the requirements of § 60-534 do not apply to automobile policies that have not been certified as proof of financial responsibility under the Motor Vehicle Safety Responsibility Act,[7] and Bocanegra had produced "no evidence" that the Viking policy was so certified. The garnishment court also rejected both of Bocanegra's constitutional challenges to § 60-561, reasoning that she failed to meet her burden of proof.

Bocanegra filed this appeal, along with a notice of a constitutional question pursuant to Neb. Ct. R. App. P. § 2-109(E) (rev. 2024). We moved the appeal to our docket.

## II. ASSIGNMENT OF ERROR

On appeal, Bocanegra assigns multiple errors, but does not challenge the district court's determination that the Viking policy excluded liability coverage for Gonzalez because he was not a named driver. Instead, consolidated and restated, she assigns that the garnishment court erred in refusing to "reform"[8] the Viking policy to provide liability coverage to Gonzalez under the theory that he was a permissive driver.

---

[7] See, e.g., *Allied Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 243 Neb. 779, 502 N.W.2d 484 (1993); *National Am. Ins. Co. v. Continental Western Ins. Co.*, 243 Neb. 766, 502 N.W.2d 817 (1993), *disapproved on other grounds, McGill v. Lion Place Condo. Assn.*, 291 Neb. 70, 864 N.W.2d 642 (2015); *State Farm Mut. Auto. Ins. Co. v. Hildebrand*, 243 Neb. 743, 502 N.W.2d 469 (1993).

[8] Brief for appellant at 16.

Viking attempts to cross-appeal, challenging the garnishment court's determination that *Medical Protective Co.*[9] allowed Bocanegra to litigate the issue of coverage in the garnishment proceeding despite the prior Hall County declaratory judgment.

## III. STANDARD OF REVIEW

[1] Garnishment is a legal proceeding.[10] To the extent factual issues are involved, the findings of the fact finder will not be set aside on appeal unless clearly wrong; however, to the extent issues of law are presented, an appellate court has an obligation to reach independent conclusions irrespective of the determinations made by the court below.[11]

[2,3] Subject matter jurisdiction is a question of law.[12] A jurisdictional issue that does not involve a factual dispute presents a question of law, which an appellate court independently decides.[13]

## IV. ANALYSIS

[4,5] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[14] This obligation requires appellate courts to consider whether the court from which the appeal was taken had jurisdiction, because if it did not, then the appellate court acquires no jurisdiction.[15]

[6] Although the practice is not expressly authorized by the statutes governing garnishment in aid of execution, Nebraska

---

[9] *Medical Protective Co., supra* note 1.

[10] *Florence Lake Investments v. Berg*, 312 Neb. 183, 978 N.W.2d 308 (2022).

[11] *Id.*

[12] *Joshua M. v. State*, 316 Neb. 446, 5 N.W.3d 454 (2024).

[13] *Powers v. Board of Directors of Elmwood Tower*, 320 Neb. 906, 31 N.W.3d 599 (2026).

[14] *Id.*; *Castillo v. Libert Land Holdings 4*, 316 Neb. 287, 4 N.W.3d 377 (2024).

[15] *Powers, supra* note 13.

case law has long permitted judgment creditors to use garnishment proceedings in aid of execution as a vehicle for determining whether a garnishee's insurance policy provides coverage to the judgment debtor.[16] Consistent with that precedent, Bocanegra used garnishment in aid of execution to obtain a judicial determination of whether the Viking policy provided liability coverage to Gonzalez, but on appeal, she does not challenge the garnishment court's determination of noncoverage. Instead, she challenges only the garnishment court's refusal to reform the Viking policy to include coverage for permissive drivers, which she contends is required under § 60-534. The parties have not questioned either the garnishment court's authority to reform the Viking insurance policy or Bocanegra's standing to seek such relief. But these are jurisdictional questions this court cannot ignore, because questions regarding a court's subject matter jurisdiction must be resolved as a threshold matter before an examination of the merits.[17]

[7-9] Subject matter jurisdiction is the power of a tribunal to hear and determine a case in the general class or category to which the proceedings in question belong and to deal with the general subject matter involved.[18] The question of a court's subject matter jurisdiction does not turn solely on the court's authority to hear a certain class of cases. It also involves determining whether a court has authority to address a particular question that it assumes to decide or to grant

---

[16] See, e.g., *Fokken v. Steichen*, 274 Neb. 743, 744 N.W.2d 34 (2008); *R.W. v. Schrein*, 263 Neb. 708, 642 N.W.2d 505 (2002), *modified on rehearing* 264 Neb. 818, 652 N.W.2d 574; *Farr v. Designer Phosphate & Premix Internat.*, 253 Neb. 201, 570 N.W.2d 320 (1997); *Torrison, supra* note 3; *Barry v. Tanner*, 250 Neb. 116, 547 N.W.2d 730 (1996); *Hiway 20 Terminal, Inc. v. Tri-County Agri-Supply, Inc.*, 235 Neb. 207, 454 N.W.2d 671 (1990); *Bisgard v. Johnson*, 3 Neb. App. 198, 525 N.W.2d 225 (1994).

[17] See *Joshua M., supra* note 12.

[18] *Davis v. Moats*, 308 Neb. 757, 956 N.W.2d 682 (2021).

the particular relief requested.[19] The requirement of standing is fundamental to a court's exercise of subject matter jurisdiction,[20] and only a party who has standing may invoke the jurisdiction of a court.[21]

These jurisdictional principles compel us to answer two threshold questions before considering Bocanegra's contention that the garnishment court erred in refusing to reform the Viking policy. First, we must consider whether, in a proceeding to determine garnishee liability under an insurance policy, the garnishment court has subject matter jurisdiction to entertain requests to reform the subject policy. Second, we must consider whether one who is not a party to an insurance contract has standing to seek reformation of the policy. To answer these questions, we first review the general nature of garnishment proceedings, we then consider the general nature of actions to reform insurance policies, and, finally, we consider issues of standing.

## 1. Garnishment in Aid of Execution

[10,11] Garnishment in aid of execution is a method by which a judgment creditor can recover against a third party for the debt owed by a judgment debtor.[22] Such a proceeding is, in effect, an action by a judgment debtor in the garnishor's name against the garnishee.[23]

[12,13] Under the garnishment statutes, a garnishee is liable to the judgment creditor if it "shall appear upon the trial of the liability of the garnishee that the garnishee was (1) indebted to the defendant, or (2) had any property or credits

---

[19] *In re Interest of Trey H.*, 281 Neb. 760, 798 N.W.2d 607 (2011).

[20] See *Hawley v. Skradski*, 304 Neb. 488, 935 N.W.2d 212 (2019).

[21] See, e.g., *State v. McKinney, ante* p. 172, 33 N.W.3d 430 (2026); *Nebraska Firearms Owners Assn. v. City of Lincoln*, 319 Neb. 723, 24 N.W.3d 891 (2025).

[22] See *Florence Lake Investments, supra* note 10.

[23] See *id.*

of the defendant, in his possession or under his control *at the time of being served with the notice of garnishment.*"[24] As such, a garnishee's liability is to be determined as of the time the garnishment summons is served.[25] And in an action to determine the liability of the garnishee, the judgment creditor has the burden to establish that the garnishee was liable to the judgment debtor at the time notice of garnishment was served.[26]

[14-16] As a general principle, the claim of a judgment creditor against a garnishee can rise no higher than the claim of the judgment debtor against the garnishee.[27] We have said that "[a] garnishor is subrogated to the rights of the judgment debtor and can recover only by the same right and to the same extent that the judgment debtor might recover from the garnishee."[28] Accordingly, when determining the liability of a garnishee, the test is whether, at the time the summons in garnishment was served, the facts would support a recovery by the judgment debtor against the garnishee.[29]

[17,18] We have long recognized that garnishment is a "legal, not equitable, remedy unknown at common law and is a purely statutory remedy."[30] Because garnishment is a creature

---

[24] See Neb. Rev. Stat. § 25-1030.02 (Reissue 2016) (emphasis supplied).

[25] *Florence Lake Investments, supra* note 10.

[26] See, *Huntington v. Pedersen*, 294 Neb. 294, 883 N.W.2d 48 (2016); *Gerdes v. Klindt*, 253 Neb. 260, 570 N.W.2d 336 (1997).

[27] See, *Davis Erection Co. v. Jorgensen*, 248 Neb. 297, 534 N.W.2d 746 (1995); *Action Heating & Air Cond. v. Petersen*, 229 Neb. 796, 429 N.W.2d 1 (1988).

[28] *Florence Lake Investments, supra* note 10, 312 Neb. at 198, 978 N.W.2d at 322.

[29] See *Florence Lake Investments, supra* note 10.

[30] *Spaghetti Ltd. Partnership v. Wolfe*, 264 Neb. 365, 369, 647 N.W.2d 615, 620 (2002), *disapproved on other grounds, ML Manager v. Jensen, supra* note 3. See *NC + Hybrids v. Growers Seed Assn.*, 219 Neb. 296, 363 N.W.2d 362 (1985), *disapproved on other grounds, ML Manager, supra* note 3.

of statute, garnishment proceedings are necessarily governed by statutory provisions and specifications, and "[c]ourts may not allow garnishment proceedings to follow any course other than that charted by the Legislature."[31]

### 2. Reformation of Insurance Contracts

[19] In contrast to the purely statutory, legal remedy of garnishment in aid of execution, reformation of an insurance policy is an equitable remedy.[32] Nebraska law has recognized the power of a court sitting in equity to reform an insurance policy to correct a mutual mistake,[33] to correct a unilateral mistake caused by the fraud or inequitable conduct,[34] to correct an agent's misrepresentation,[35] and to include an omitted term previously agreed to.[36]

Bocanegra did not seek reformation on any of these grounds. Instead, she asked that the Viking policy be reformed because it failed to conform to the requirements of § 60-534 and thus violated public policy. Although it is generally permissible for one who is a party to an insurance contract to seek the equitable relief of reformation on the ground the policy fails

---

[31] *Spaghetti Ltd. Partnership, supra* note 30, 264 Neb. at 370, 647 N.W.2d at 620.

[32] See, *Continental Cas. Co. v. Calinger*, 265 Neb. 557, 657 N.W.2d 925 (2003); *Parry v. State Farm Mut. Auto. Ins. Co.*, 191 Neb. 628, 216 N.W.2d 875 (1974); *Central Granaries Co. v. Nebraska L. M. Ins. Ass'n*, 106 Neb. 80, 182 N.W. 582 (1921); *Wahoo Locker v. Farm Bureau Prop. & Cas. Ins. Co.*, 24 Neb. App. 144, 885 N.W.2d 731 (2016).

[33] See, e.g., *Continental Cas. Co., supra* note 32; *Central Granaries Co., supra* note 32.

[34] See, *Jelsma v. Acceptance Ins. Co.*, 233 Neb. 556, 446 N.W.2d 725 (1989); *Ridenour v. Farm Bureau Ins. Co.*, 221 Neb. 353, 377 N.W.2d 101 (1985).

[35] See, e.g., *Flamme v. Wolf Ins. Agency*, 239 Neb. 465, 476 N.W.2d 802 (1991); *Heikes v. Farm Bureau Ins. Co.*, 181 Neb. 827, 151 N.W.2d 336 (1967).

[36] See, e.g., *Jelsma, supra* note 34; *Mogil v. Maryland Casualty Co.*, 147 Neb. 1087, 26 N.W.2d 126 (1947); *Davis v. Highway Motor Underwriters*, 120 Neb. 734, 235 N.W. 325 (1931).

to conform to an applicable statute,[37] there are several reasons why the garnishment court here lacked jurisdiction to consider Bocanegra's request to reform the Viking policy. We address each reason in turn.

### 3. Garnishment Court Lacked Jurisdiction Over Bocanegra's Request to Reform Viking Policy

Because garnishment in aid of execution is a purely statutory legal remedy and not an equitable remedy,[38] we question whether there are any circumstances under which a garnishment court, in a proceeding to determine garnishee liability under an insurance contract, would have subject matter jurisdiction to consider an equitable claim to reform the insurance policy. We are not aware of any statute that authorizes a garnishment court to grant equitable relief when determining garnishee liability, and the parties do not direct us to any. Moreover, because a garnishee's liability must be determined at the time the garnishment summons is served, we are skeptical that a garnishment court could ever premise a finding of garnishee liability on an insurance policy that was equitably reformed after service of the garnishment summons.

But even assuming for the sake of argument that there could be a circumstance under which a district court with general equity jurisdiction,[39] sitting as a fact finder to determine

---

[37] See, e.g., *National Am. Ins. Co., supra* note 7. See, also, 2 Steven Plitt et al., Couch on Insurance 3d § 26:1 at 26-9 (2024) (where policy terms violate applicable statutory provision, "reformation is required so as to assure that the coverage will meet statutorily prescribed minimums").

[38] See, *ML Manager, supra* note 3; *J.K. v. Kolbeck*, 257 Neb. 107, 595 N.W.2d 875 (1999), *disapproved on other grounds, ML Manager, supra* note 3; *Otoe Cty. Nat. Bank v. Froelich*, 234 Neb. 1, 448 N.W.2d 917 (1989).

[39] See, Neb. Const. art. V, § 9 (conferring both chancery and common law jurisdiction on district courts); *Webb v. Nebraska Dept. of Health & Human Servs.*, 301 Neb. 810, 828-29, 920 N.W.2d 268, 282 (2018) (noting "the Legislature cannot limit or control the common law and equity jurisdiction granted to the district court by the constitution").

garnishee liability under an insurance contract, might also have subject matter jurisdiction to reform the contract, we are confident the instant appeal does not present such a circumstance. To explain why, we turn to the jurisdictional issue of Bocanegra's standing to seek reformation of the Viking policy.

[20] Although it can be assumed that either Viking or its insureds would have standing to seek reformation of the insurance policy in a proper proceeding, we are aware of no circumstance under which Bocanegra, as a stranger to the insurance agreement, would acquire such standing. As a general rule, reformation of written instruments may be had by the immediate parties thereto and by those standing in privity with them, but a person not a party or privy to the transaction may not maintain the action.[40] And as we explain next, Bocanegra was not a party to the insurance contract, and there was no evidence that she stood in privity with any party to the contract.

[21] Nebraska recognizes the general rule that there is no privity between an injured person and the tort-feasor's liability insurer.[41] For this reason, Nebraska does not permit an injured person to bring direct actions against the tort-feasor's liability insurer.[42] Moreover, "[t]his court has never held that an injured person is a third-party beneficiary of a liability insurance policy insuring the tort-feasor."[43] Because Bocanegra was not a party to the insurance contract, did not stand in privity with any party to the insurance contract, and cannot claim to be a third-party beneficiary under the contract, she lacked standing to seek reformation of the policy.

---

[40] See *Schlake v. Jacobsen*, 246 Neb. 921, 524 N.W.2d 316 (1994).

[41] See, *Molina v. American Alternative Ins. Corp.*, 270 Neb. 218, 699 N.W.2d 415 (2005); *Medical Protective Co., supra* note 1; *West Neb. Gen. Hosp. v. Farmers Ins. Exch.*, 239 Neb. 281, 475 N.W.2d 901 (1991).

[42] See *id.*

[43] *Molina, supra* note 41, 270 Neb. at 223, 699 N.W.2d at 419.

As such, although the garnishment court plainly had subject matter jurisdiction to determine Viking's garnishee liability, it lacked subject matter jurisdiction to consider the merits of Bocanegra's request to reform the policy. We therefore vacate the portion of the garnishment judgment purporting to rule on the merits of Bocanegra's request to reform the policy but otherwise affirm the garnishment court's judgment of discharge.

### 4. Viking's Attempted Cross-Appeal

[22] Although Viking purports to bring a cross-appeal challenging the garnishment court's determination that the 2023 declaratory judgment of noncoverage was not binding on Bocanegra in the garnishment proceedings, Viking's appellate brief fails to comply with the rules governing cross-appeals. A party wishing to secure appellate review of a cross-appeal must comply with the appellate briefing rules.[44]

Neb. Ct. R. App. P. § 2-101(E) (rev. 2022) provides: "The proper filing of an appeal shall vest in an appellee the right to a cross-appeal against any other party to the appeal," and it requires that any cross-appeal must be "asserted in the appellee's brief as provided by § 2-109(D)(4)." Section 2-109(D)(4) (emphasis supplied), in turn, states:

> *Cross-Appeal*. Where the brief of appellee also presents a cross-appeal, it shall be clearly noted on the cover of the brief. Within the appellee's brief, the cross-appeal shall be set forth in a separate section of the brief. This separate section shall be headed "Brief on Cross-Appeal" and shall be prepared in the same manner and under the same rules as the brief of appellant. See § 2-109(D)(1).

We discussed the requirements of § 2-109(D)(4) in *North Star Mut. Ins. Co. v. Miller*,[45] where we explained:

---

[44] See *North Star Mut. Ins. Co. v. Miller*, 311 Neb. 941, 977 N.W.2d 195 (2022).

[45] *Id*. at 954, 977 N.W.2d at 205 (emphasis supplied).

A cross-appeal must be properly designated, pursuant to § 2-109(D)(4), if affirmative relief is to be obtained. A cross-appeal is properly designated by noting it on the cover of the appellee brief and setting it forth in a separate division of the brief. This separate section "shall be headed 'Brief on Cross-Appeal' and shall be prepared in the same manner and under the same rules as the brief of appellant. See § 2-109(D)(1)." Under § 2-109(D)(1)(b) through (i), the brief of appellant must include, in part, a (1) statement of the basis of jurisdiction, (2) statement of the case, (3) separate assignment of errors section, (4) propositions of law, (5) statement of facts, (6) summary of the argument, and (7) the argument.

*. . . The decisive particulars governing how we treat failures to fully abide with the rules for the brief of an appellant depend on the nature of the noncompliance.*

Here, Viking's appellate brief often referenced a cross-appeal, but it did not set forth the cross-appeal in a "separate section" of the brief as required by § 2-109(D)(4). More specifically, Viking's brief contains no separate title page for the cross-appeal. Nor does it contain a separate table of contents, statement of the basis of jurisdiction, statement of the case, assignments of error, or propositions of law that pertain only to the cross-appeal, as required by § 2-109(D)(4). Instead, Viking attempted to consolidate these sections into the brief of the appellee, and the result is that reference to the cross-appeal is scattered throughout the brief.

[23] When an appellee's brief fails to present a cross-appeal that conforms to the requirements of § 2-109(D) (rev. 2025), an appellate court can decline to consider the cross-appeal[46] or may elect to review the proceedings for plain error.[47] Given the nature of the briefing deficiencies here, we decline to consider the cross-appeal.

---

[46] See *Prinz v. Omaha Operations*, 317 Neb. 744, 11 N.W.3d 641 (2024).

[47] See *North Star Mut. Ins. Co., supra* note 44.

## V. CONCLUSION

For the foregoing reasons, we conclude the garnishment court had subject matter jurisdiction to determine Viking's garnishee liability but lacked subject matter jurisdiction to consider Bocanegra's request to reform the Viking policy. We therefore vacate the portion of the garnishment judgment purporting to rule on reformation but otherwise affirm the garnishment court's judgment of discharge.

Affirmed in part, and in part
vacated and set aside.

Stacy, J., concurring.

I concur in all respects with the reasoning and holding of the majority, including the decision not to address the cross-appeal due to briefing deficiencies. But I write separately to suggest that, in a more appropriate case, we should revisit our holding in *Medical Protective Co. v. Schrein*[1] to clarify, among other things, whether injured claimants are necessary parties to a declaratory judgment action seeking a determination of whether a liability insurance policy provides coverage to the tort-feasor. Our case law on this question is conflicting, and as this appeal illustrates, *Medical Protective Co.* has generated confusion not just in declaratory judgment actions, but in subsequent garnishment proceedings too.

In *Medical Protective Co.*, a professional liability insurer filed a declaratory judgment action seeking a declaration of noncoverage after its insured, a pediatrician, was convicted of sexually assaulting several minor patients. The pediatrician was named as a defendant in the declaratory judgment action, as were five injured claimants, some of whom had already filed personal injury actions against the pediatrician. The district court entered a declaration of noncoverage, reasoning that the pediatrician had admitted the sexual conduct alleged by the claimants and concluding that such conduct did not constitute

---

[1] *Medical Protective Co. v. Schrein*, 255 Neb. 24, 582 N.W.2d 286 (1998).

"professional services"[2] within the meaning of the professional liability policy. The injured claimants appealed, and we reversed the declaration of noncoverage against the claimants but left the judgment in place against the pediatrician.

We framed the dispositive issue in *Medical Protective Co.* as "whether a declaratory judgment action may or should be used as a means by which a tort-feasor's liability insurer may obtain a declaration of noncoverage that is binding against an injured person in a later action."[3] And we identified the "narrow question [as] whether the trial court erred in exercising its jurisdiction *over the claimants*"[4] in the declaratory judgment action. We recited the general rule that "there is no privity between an injured person and the tort-feasor's liability insurer [and for] this reason, direct actions against liability insurance carriers based on the negligence of the insured are not permitted in Nebraska."[5] Based on this rule, we stated, "[I]t would be illogical and inconsistent to permit a tort-feasor's liability insurer to seek in a direct action a declaration of noncoverage that is binding against an injured person in a later action."[6]

After discussing issues of privity, standing, and subject matter jurisdiction in declaratory judgment actions, the court in *Medical Protective Co.* ultimately concluded the insurer's "attempt to obtain a declaration of noncoverage that would be binding on an injured person in a later action is inappropriate, since more effective relief can and should be obtained in other proceedings."[7] The only "other proceeding" we mentioned in *Medical Protective Co.* was garnishment, and we suggested that the insurer's "defenses or assertions

---

[2] *Id*. at 27, 582 N.W.2d at 289.

[3] *Id*. at 28-29, 582 N.W.2d at 290.

[4] *Id*. at 29, 582 N.W.2d at 290 (emphasis supplied).

[5] *Id.* at 30, 582 N.W.2d at 290.

[6] *Id*.

[7] *Id.* at 31, 582 N.W.2d at 291.

of noncoverage can be presented without any consequential harm to [the insurer] if or when any of the claimants seeks to garnish policy proceeds as a result of a judgment against [the pediatrician]."[8] We expressly stated that our holding did "not affect the declaratory judgment that was rendered in favor of [the insurer] and against [the pediatrician]."[9]

Our opinion in *Medical Protective Co.* neither cited nor discussed our earlier opinion in *Krohn v. Gardner*,[10] where we considered a similar question but reached the opposite conclusion. In *Krohn*, we held that injured claimants are not only interested parties but are "indispensable parties"[11] in declaratory judgment actions between tort-feasors and their liability carriers to determine coverage.[12]

The injured claimants in *Krohn* obtained judgments against the tort-feasor for damages arising out of an automobile accident and then filed a garnishment in aid of execution against the tort-feasor's automobile liability insurer. The garnishee/insurer denied that it had property belonging to the judgment debtor/tort-feasor and argued that the question of coverage had already been conclusively determined in a declaratory judgment action brought by the tort-feasor against his insurer; in that action, the parties stipulated that the policy did not afford coverage for the accident.

The garnishment court in *Krohn* determined that although the injured claimants had not been made parties to the

---

[8] *Id.*

[9] *Id*.

[10] *Krohn v. Gardner*, 238 Neb. 460, 471 N.W.2d 391 (1991).

[11] *Id*. at 463, 471 N.W.2d at 394.

[12] Accord *Harleysville Ins. Group v. Omaha Gas Appliance Co.*, 278 Neb. 547, 554, 772 N.W.2d 88, 94 (2009) (holding that although injured claimants lack privity of contract with tort-feasor's liability insurer, they are "interested and proper parties to a declaratory judgment action brought by the insurer against the insured to determine coverage as it pertains to a pending lawsuit").

declaratory judgment action, the stipulated declaration of noncoverage was binding on them in garnishment proceedings, reasoning that because the insurer "was not indebted to [the tort-feasor], it could not be indebted to [the injured claimants]."[13] The injured claimants appealed, arguing that because they had not been made parties to the declaratory judgment action, "their legal rights in [the tort-feasor's] liability insurance policy"[14] were not considered in that action. We agreed and stated that because the injured claimants had not been made parties in the declaratory judgment action, "their rights [had] been prejudiced"[15] in the garnishment action.

We began our analysis in *Krohn* by reviewing the rules governing declaratory judgment actions generally, noting that Nebraska case law "makes it clear that the statute authorizing a declaratory judgment is applicable only where all interested persons are made parties to the proceedings"[16] and that "indispensable parties to a suit are those who have such an interest in the controversy that the court cannot render a final decree without affecting their interests."[17] We concluded that because the injured claimants in *Krohn* had an interest that would be affected by any coverage determination, "[t]hey were indispensable parties"[18] in the declaratory judgment action between the tort-feasor and his insurer. Then, reasoning that

---

[13] *Krohn, supra* note 10, 238 Neb. at 462, 471 N.W.2d at 393.

[14] *Id*.

[15] *Id*. at 462, 471 N.W.2d at 394.

[16] *Id.* at 463, 471 N.W.2d at 394 (internal quotation marks omitted). See, also, Neb. Rev. Stat. § 25-21,159 (Reissue 2016) (providing that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding").

[17] *Krohn, supra* note 10, 238 Neb. at 463, 471 N.W.2d at 394 (internal quotation marks omitted).

[18] *Id*.

the injured claimants in *Krohn* had "not been provided the opportunity to be heard"[19] in the declaratory judgment action, we held they "must be given an opportunity for their day in court against the insurance company"[20] in the garnishment proceedings, and we reversed the judgment and remanded the cause for a new garnishment trial.

In my opinion, the holdings in *Medical Protective Co.* and *Krohn* are contradictory and irreconcilable. *Medical Protective Co.* effectively holds that injured claimants are not necessary parties in declaratory judgment actions between tort-feasors and their liability insurer, while *Krohn* holds that injured claimants are indispensable parties in such actions. I respectfully suggest that in a future case, where the issue is more squarely presented and properly briefed, this court should address these inconsistent holdings and clarify which, if either, is correct.

When we do so, I think it would also be helpful to clarify how garnishment courts should treat a prior declaration of noncoverage. Both *Medical Protective Co.* and *Krohn* appear to hold, albeit for different reasons, that even when a court of competent jurisdiction has already declared that the tort-feasor's liability policy provides no coverage, injured claimants must nevertheless be given an opportunity—in a garnishment proceeding against the tort-feasor's liability insurer—to relitigate the availability of coverage. I am not sure that reasoning can be squared with the established garnishment framework in Nebraska.

As the majority opinion correctly observes, garnishment in aid of execution is effectively a legal proceeding by a judgment debtor in the garnishor's name against the garnishee.[21] And in such a proceeding, the claim of a judgment creditor

---

[19] *Id.* at 464, 471 N.W.2d at 394.

[20] *Id.* at 467, 471 N.W.2d at 396.

[21] See *Florence Lake Investments v. Berg*, 312 Neb. 183, 978 N.W.2d 308 (2022).

can rise no higher than the claim of the judgment debtor against the garnishee.[22] In other words, "A garnishor is subrogated to the rights of the judgment debtor and can recover only by the same right and to the same extent that the judgment debtor might recover from the garnishee."[23] That is why, at a trial to determine the liability of a garnishee, the test is whether, at the time the summons in garnishment was served, the facts would support a recovery by the "*judgment debtor against the garnishee*."[24] It is the judgment creditor's burden to prove that the garnishee was liable to the judgment debtor at the time notice of garnishment was served.[25]

Under this statutory framework, it seems to me that when a garnishee/insurer relies on a prior declaration of noncoverage to contend that it is not indebted to the judgment debtor/tort-feasor, the issue to be determined in a trial on garnishee liability is not whether the court should treat the prior declaratory judgment as "binding" on the judgment creditor/injured claimant, but whether the judgment creditor can establish some reason why the declaratory judgment *is not binding as between the garnishee/insurer and the judgment debtor*.[26] Yet here, Bocanegra made no attempt to prove there was some reason why the declaratory judgment was not

---

[22] See, *Davis Erection Co. v. Jorgensen*, 248 Neb. 297, 534 N.W.2d 746 (1995); *Action Heating & Air Cond. v. Petersen*, 229 Neb. 796, 429 N.W.2d 1 (1988).

[23] *Florence Lake Investments, supra* note 21, 312 Neb. at 198, 978 N.W.2d at 322.

[24] *Id.* at 199, 978 N.W.2d at 322 (emphasis supplied).

[25] See, *Huntington v. Pedersen*, 294 Neb. 294, 883 N.W.2d 48 (2016); *Gerdes v. Klindt*, 253 Neb. 260, 570 N.W.2d 336 (1997).

[26] See *Krohn, supra* note 10 (Boslaugh, J., dissenting) (reasoning that because rights of judgment creditor in garnishment proceedings are derived through judgment debtor, and prior declaratory judgment was binding as between garnishee and judgment debtor, judgment of discharge should have been affirmed).

enforceable by the "judgment debtor against the garnishee,"[27] because she understood *Medical Protective Co.* and *Krohn* as invitations to relitigate the prior coverage determination in a garnishment proceeding.

To the extent *Medical Protective Co.* and *Krohn* can be read to suggest that garnishment proceedings can be used by judgment creditors to relitigate whether the garnishee's liability policy affords coverage to the judgment debtor, I think we should disapprove of such a reading because it is inconsistent with the statutory garnishment framework and creates the potential for conflicting coverage determinations between the same parties. In this case, the garnishment court ultimately reached the same determination of noncoverage as was reached in the prior declaratory judgment action.[28] But if it had ruled differently, which coverage determination would be binding as between the insurer and its insured?

For all these reasons, I think our holdings in *Medical Protective Co.* and *Krohn* are causing unnecessary confusion in both declaratory judgment actions and in garnishment proceedings. In a proper case, this court should revisit these cases to clarify whether injured claimants are necessary parties to declaratory judgment actions between liability insurers and tort-feasors, as well as to address how a declaration of noncoverage should be treated in a subsequent garnishment proceeding.

---

[27] *Florence Lake Investments, supra* note 21, 312 Neb. at 199, 978 N.W.2d at 322.

[28] See, also, *R.W. v. Schrein*, 263 Neb. 708, 642 N.W.2d 505 (2002), *modified on rehearing* 264 Neb. 818, 652 N.W.2d 574 (after permitting judgment creditors to relitigate coverage in garnishment proceeding, garnishment court held no coverage was available for same reason relied upon in prior declaratory judgment action).